## ROBBINS et al. v. WYNNE.

### No. 1502—5789.

Commission of Appeals of Texas, Section A.

Jan. 6, 1932.

Stewart & De Lange and Franklin & Blankenbecker, all of Houston, and Maco Stewart, of Galveston, for plaintiffs in error.

Ross, Wood, Lawler & Wood and R. Wayne Lawler, all of Houston, for defendant in error.

**CRITZ, J.**

This suit was instituted in the district court of Harris county, Tex., by Mrs. Mary Robbins, joined pro forma by her husband, against R. L. Wynne, to recover an interest in certain real property in Houston, Harris county, Tex., and for receivership and an accounting for rents. Trial in the district court with a jury resulted in a verdict and judgment for Wynne. On appeal, this judgment was affirmed by the Court of Civil Appeals at Galveston. 28 S.W.(2d) 225. Mrs. Robbins brings error. We shall hereafter refer to Mrs. Robbins as plaintiff, and Wynne as defendant.

It appears from the record that the plaintiff furnished defendant the sum of $9,750 for the purpose of purchasing the real property here involved. On the trial, it was the contention of the plaintiff that this money was furnished to the defendant, who was married to her niece, with the understanding and agreement that the property should be purchased in the joint names of the plaintiff and the defendant, but that the defendant had, without the knowledge or consent of the plaintiff, taken the title solely in his own name, and also was denying that plaintiff had any interest therein. Plaintiff's petition and testimony go into detail with reference to the above matters, but we think we have made a sufficient statement of the case from the plaintiff's standpoint to meet the purposes of this opinion.

The defendant, by his testimony and pleadings, contends that the money above mentioned was furnished to him by the plaintiff to buy the property in question, but that same was a gift, and that there was no understanding or agreement of any character that the plaintiff was to have any right, title, or interest therein, or that such property should be purchased in the joint names of the plaintiff and defendant. The answer of the defendant and his evidence go into detail with reference to the facts and circumstances of the transaction, which we do not deem necessary to detail here.

The opinion of the Court of Civil Appeals goes more into detail than we have with reference to the facts and issues of the case. We refer to that opinion for further statement.

Only one issue was submitted to the jury, which was: "Was it understood and agreed between Mrs. Robbins and R. L. Wynne at the time Mrs. Robbins delivered her check for $9,750.00 to Wynne, that Mrs. Robbins was to be the owner of one-half interest in the property being purchased from Phelps?" The jury answered the above issue: "It was not."

During the trial of the case, the defendant and some of his witnesses testified to certain matters which were corroborative of defendant's contentions. It also appeared that certain of these facts were known to a Mrs. Howard, a sister of defendant's wife, and a niece of the plaintiff. Mrs. Howard was not offered as a witness by either side, and no explanation was offered before the jury by either side for the failure to use Mrs. Howard as a witness.

█ With the record in the above condition, it is shown by proper bill of exception that, while defendant's counsel was making his argument to the jury after the charge had been read, he stated, as shown by the bill, "that he, counsel, did not put Mrs. Howard, a sister of defendant's wife, and a niece of the plaintiff, Mrs. Robbins, on the stand because Mrs. Howard had been a recent recipient of the plaintiff, Mrs. Robbins', bounty and that Mrs. Howard had told him, defendant's counsel, that she therefore did not wish to testify in the case."

The bill, with reference to the above matter, further shows that the above argument was not made in reply to anything that had been said by plaintiff's counsel. Also, the bill shows that when the above argument or statement was made the plaintiff's counsel, in open court, in the presence of the jury, objected thereto on the ground that such argument or statement was improper and outside the record; whereupon the defendant's counsel, at once, and before any ruling of the court, stated that he had not intended going outside the record and withdrew his statement, and requested the jury not to consider the same. Also, defendant's counsel requested the court to instruct the jury not to consider such remarks for any purpose, which the court accordingly did. We think the above transaction presents error, which must result in a reversal of this case. When we come to analyze what the jury might construe the statement to mean, we are compelled to the conclusion that they did understand from the statement that Mrs. Howard, who was a niece of the plaintiff, and who had very recently received bounties from the plaintiff, if put on the stand, would give testimony which would support and corroborate the testimony of the defendant and his witnesses. In fact, we think that the statement was tantamount to counsel telling the jury that Mrs. Howard would have given testimony supporting defendant's defenses if she had testified. Certainly, no court could say with any degree of

certainty that the jury did not so understand the statement. It follows that counsel for defendant went outside the record and gave the jury evidence which they should have received, if at all, from the lips of the witness, and not as hearsay from the lips of counsel.

█ Furthermore, we do not think the error was of such a character that this court can say with any degree of certainty that counsel's acknowledgment of his error in the presence of the jury, and the court's instruction to disregard it, have rendered the error harmless. In fact, we think that a wrong has been done which was and is fatal to this trial.

The Court of Civil Appeals holds that the argument was error, even to such an extent that the counsel who made it so concluded, but the Court of Civil Appeals further holds that the argument, together with the other circumstances, does not show an error reasonably calculated to work prejudice to the plaintiff. The Court of Civil Appeals further holds: "Whether such argument was reasonably calculated to prejudice the jury is left largely to the discretion of the trial court in passing on the motion for new trial, and when, as in this case, the trial judge has exercised such discretion and overruled the motion, we are not prepared to hold, under the circumstances shown, that such discretion was abused. It is only when from the record on appeal it is clear that argument in violation of the rule above stated is reasonably calculated to prejudice the rights of the complainant that an appellate court is authorized to overrule the discretion exercised by the trial court in overruling the complaint." 28 S.W.(2d) 225, 229.

█ We are unable to agree with the Court of Civil Appeals in the above holding. In our opinion, when it becomes an issue of fact as to whether an alleged misconduct actually occurred, and the trial court hears evidence on such question and determines the issue, his finding and judgment should not be disturbed unless palpably wrong. When, as in a case like this, the improper argument and circumstances surrounding it are undisputed, we think the issue of injury is purely a law question. We think, further, that when counsel goes outside the record and gives the jury information that is calculated to injure the other side, it is misconduct which must result in a reversal, unless it clearly and affirmatively appears that no injury has been done. In other words, we hold that the same rule governs in such instances as governs where the jury itself is guilty of misconduct and hears evidence outside the record while it is deliberating on a verdict. M., K. & T. Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508, 509; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765, 767; Fidelity Union Casualty Co. v. Cary (Tex. Com. App.) 25 S.W.(2d) 302 (Com. App. opinion approved).

In M., K. & T. Ry. Co. v. Hannig, supra, our Supreme Court had before it the question as to whether the admission of certain improper testimony presented harmless error. The Court of Civil Appeals (41 S. W. 196) had held such evidence improper, but the error in admitting same harmless. In passing on the issue involved and the rule of law which must apply in such matter, this court, speaking through Judge Gaines, said: "The true rule is that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence. Since it does not so appear with reference to the testimony in question, the judgment must be set aside, and a new trial awarded."

The above-quoted rule clearly demonstrates that the Supreme Court meant to reject the rule applied by the Court of Civil Appeals in the instant case in so far as it applies to incompetent testimony, and we can see no difference between incompetent testimony heard direct from a witness and hearsay testimony heard through the lips of counsel. In fact, such testimony heard from the lips of counsel may prove far more injurious than the same testimony heard direct from the witness. In the latter instance, the witness can be subjected to cross-examination and impeachment, and his evidence argued or discussed with the jury, while in the former instance no such opportunities can be available to opposing counsel.

In Bell v. Blackwell, supra, Section B of the commission had before it a case involving improper argument to the jury, and the opinion by Judge Speer very clearly and correctly announces the rule that applies to improper argument of counsel as regards reversible error, and holds that the same rule applies that would apply to the misconduct of the jury itself. We here quote the following from Judge Speer's opinion: "So that, there being error in the proceedings through which plaintiffs in error lost their case, the cause should be remanded, unless it affirmatively appears from the record that such error was harmless; or, differently stated, a reversal should follow if there is any reasonable doubt of its harmful effect. There is no reason to hold that this rule should apply to errors of the court in admitting or rejecting evidence and to errors of the court in passing upon the misconduct of the jury, and to deny that it applies to errors of the court in his rulings upon arguments of counsel to the jury. What difference can it make if the jury considers something it should not consider, whether it be through an improper ruling of the court, the impassioned argument of counsel, or the clandestine receipt of information outside the courtroom? The nature of the error is the same, and the consequences to the injured party are identical in each case.

There are not different rules of reversal based upon any such fanciful classification of error."

Later on, in the same opinion, it is said: "And likewise in that line of cases cited above that the rule in the Gray Case [105 Tex. 42, 143 S. W. 606], is constantly followed. These authorities are decisive against the contention that to authorize a reversal on account of error there must be a finding of prejudice. On the contrary, they firmly establish the rule to be that, unless it affirmatively appears no prejudice resulted, or that there was no reasonable doubt of the harmless effect of the error, a reversal must follow. The two rules being compared are entirely inconsistent. They are the very opposite of each other. Of course we are considering only material errors in any event."

A careful reading of the above opinion will disclose that it expressly held that the same rule applies as regards reversible error due to improper argument that applies to the misconduct of the jury, and the opinion very significantly states: *"What difference can it make if the jury considers something it should not consider, whether it be through an improper ruling of the court, the impassioned argument of counsel, or the clandestine receipt of information outside the courtroom?"* (Italics ours.)

In Fidelity Union Casualty Co. v. Cary, supra, which is expressly approved by the Supreme Court, this section of the commission had before it the very question here involved, that is, the rule governing improper argument of counsel, and in an opinion by Judge Sharp the rule was clearly and expressly announced to be that such argument must result in a reversal, unless this court can say from the record that the issue as to whether injury resulted is free from doubt. In that case, Judge Sharp cited both Bell v. Blackwell, supra, and Railway Co. v. Hannig, supra, and approved the holding of both.

Of course we do not intend to hold that in all cases where improper argument is indulged in a reversal must follow; neither do we intend to say that injury resulting from such improper argument can never be removed by instructions by the court to the jury to disregard such argument, but in a case like this, where the issues are sharply drawn, and counsel goes outside the record and gives the jury hearsay testimony vital to the case, we do not think it can be said that the question of injury is free from doubt, or that the appellate courts are bound by the discretion of the trial court.

Finally, on this question, we do not think that under the circumstances of this case it can be held that the fact that counsel making the argument himself recognized his mistake and asked the jury to disregard his statement can cure the error here and enable this court

to say that the question of injury is free from doubt. Counsel had wrongfully gone outside the record and imparted information to the jury that it should not have received in that manner, and no withdrawal he might make would render it possible for us to say beyond a reasonable doubt that no injury resulted. Also, we think the offending party should be held strictly accountable in matters of this kind.

■ The application contains assignments of error bearing on certain other arguments to the jury by counsel for the defendant which plaintiff contends were outside the record and improper. The bills with reference to these matters show that no objections were offered to such arguments at the time. We do not deem it necessary for us to detail these matters, as they probably will not occur on another trial. We wish here to remark, however, that it is not always necessary to object to improper argument at the time it is made in order to preserve the right to present same on motion for new trial and on appeal as error. Willis & Bro. v. McNeill, 57 Tex. 465. In this connection, we hold that the correct rule is that, if the argument be such, or is made under such circumstances that, if objection is made at the time counsel making the argument can offer explanation therefor which will render such argument proper, or can make such amends as will render the same undoubtedly harmless, or, if the argument be of such a nature that its proper withdrawal by counsel or instructions by the court to the jury to disregard will cure the error, and render its harmful effect free from doubt, then the objections should be made at the time, and failure to do so waives the error. On the other hand, if the argument be such that the converse of the above propositions is true, then it would be idle to say that opposing counsel should object at the time, when the objection might do nothing more than render the improper remarks more damaging than they would be if he remained silent. We wish here to quote with our unqualified indorsement the following from Judge Bonner's opinion in Willis & Bro. v. McNeill, supra:

"Under these rules the duty devolves affirmatively, first, upon counsel to confine the argument strictly to the evidence and to the argument of opposing counsel; second, upon the court, on its own motion, to confine counsel to this line of argument. If both the counsel who is making the argument and the court should fail in the discharge of this duty, then the rules give to opposing counsel the privilege, but does not make it his duty, to then present his point of objection. This discretion given to counsel, as to whether he will make the objection at the time, was doubtless based upon the well known embarrassments and often prejudice which generally attend the interruption of the argument of one counsel by another; and was intended to place that as a duty where it properly belongs— upon the presiding judge.

"In announcing as a rule of practice that which was subsequently incorporated into the present rules of court above quoted, it is said by the late learned chief justice of this court, in Thompson v. State [43 Tex. 268], that 'Zeal in behalf of their clients, or desire for success, should never induce counsel in civil cases, much less those representing the state in criminal cases, to permit themselves to endeavor to obtain a verdict by arguments based upon other than the facts in the case and the conclusions legitimately deducible from the law applicable to them.' It is further said that such practice is of sufficiently grave importance and so highly objectionable as to require the decided condemnation of the court. 43 Tex. 274.

"Whether counsel under such circumstances remain silent or object, may be alike prejudicial to his cause. Silence may be construed into acquiescence, objection may call forth a damaging repartee.

"In Berry v. State [10 Ga. 511], the distinguished Judge Lumpkin, in commenting upon a similar question and upon the duty of the court to check the argument of counsel, says: 'That the practice complained of is highly reprehensible, no one can doubt. It ought in every instance to be promptly repressed. For counsel to undertake by a side wind to get that in proof which is merely conjecture, and thus to work a prejudice in the mind of the jury, cannot be tolerated. Nor ought the presiding judge to wait until he is called on to interpose. For it is usually better to trust to the discrimination of the jury as to what is and what is not in evidence, than for the opposite counsel to move in the matter. For what practitioner has not regretted his untoward interference, when the counsel thus interrupted, resumes, "yes, gentlemen, I have touched a tender spot, the galled jade will wince; you see where the shoe pinches." ' 10 Ga. 522.

"This question was also elaborately discussed, and the practice very gravely condemned by our court of appeals, in Hatch v. State, 8 Tex. App. 416 [34 Am. Rep. 751].

"The argument of counsel, complained of in the present case, did not legitimately belong to any proper issue in the case; was not based upon any evidence adduced, or which could have been properly adduced on the trial, and was calculated to inflame the passions and excite the prejudices of the jury. That it did so inflame and excite them may well be presumed from the very large verdict which was returned."

Of course, we do not intend to hold or to intimate that counsel in the instant case is guilty of any intentional wrong in making the argument alluded to, but counsel's motive,

be it ever so good, cannot alter the effect of the argument.

■ We think that in a case of this character it is permissible for either side to prove the financial worth of the contended donor at the time the money was furnished, or even afterwards, as bearing on the issue of gift, or motive for repudiating same. Of course, where it is contended by one person that another has made him a gift, proof that the contended donor is wealthy does not prove the gift, but it may be a circumstance to be considered along with all other surrounding facts and circumstances which will aid the jury in determining the ultimate issue as to whether the money furnished was intended as a gift. Also, in such a case, the relationship of the parties, and the state of feeling or affection existing between them at the time, and even afterwards, may constitute circumstances which will aid the jury in deciding such ultimate issue of fact.

There are other assignments presented in the application which we do not deem it necessary to discuss, as the matters therein complained of will not probably occur on another trial.

We recommend that the judgments of the Court of Civil Appeals and district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in the opinion.